NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LORIE GARLICK, TINA L. SCHROEDER, JOY SCOTT, BRYAN E. BLEDSOE, WENDY R. BRODY, KELLY BUCKLEY, G. GEOFFREY CRAIG, GAY CUMMINS, MARSHA DIENELT, BETH GIBSON, MICHELLE J. GILLUM, ROBIN M. GREEN, RICHARD P. PACZYNSKI, KRISTIE SMITH, JILL WELTON, | : : : : : : : : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| QUEST DIAGNOSTICS, INC., NATIONAL MEDICAL SERVICES, INC., d/b/a NMS LABS, LABCORP, a Subsidiary of Laboratory Corporation of America Holdings, DTS a/k/a Drug Testing Systems, FIRST LAB, a Subsidiary of FHC Health Systems, Inc., COMPASS VISION, INC., FIRST ADVANTAGE Division of The First American Corporation and "JOHN DOE" CORPORATIONS, | : : : : : : : : : : : : : : |
| Defendants. | : : |

**Hon. Dennis M. Cavanaugh**

# OPINION

Civil Action No. 06-cv-6244 (DMC)

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motion by Defendants Quest Diagnostics, Inc.

("Quest"), National Medical Services, Inc. d/b/a NMS Labs ("NMS"), Compass Vision, Inc.

("Compass"), First Hospital Laboratories, Inc., a subsidiary of FHC Health Systems, Inc.

("FirstLab") (collectively "Defendants") to dismiss the Amended Complaint of Plaintiffs Lorie Garlick, Tina L. Schroeder, Joy Scott, Bryan E. Bledsoe, Wendy R. Brody, Kelly Buckley, G. Geoffrey Craig, Gay Cummins, Marsha A. Dienelt, Beth Gibson, Michelle J. Gillum, Robin M. Green, Richard P. Paczynski, Kristi Smith and Jill Welton (collectively "Plaintiffs") pursuant to FED. R. CIV. P. 12(b)(6).

## I.  <u>BACKGROUND</u>

Plaintiffs are a class of licensed, or formerly licensed, health care professionals and former alcohol abusers.[1]  Plaintiffs are, or were, licensed to practice in several states including California, Kansas, Pennsylvania, Texas, Indiana and Oklahoma.  <u>See</u> Plaintiffs' Amended Complaint ("Complaint") ¶¶ 2-6.  As part of Plaintiffs' respective recovery plans they were to abstain from consuming alcoholic beverages.  To monitor their consumption of alcohol, the state medical licensing boards required Plaintiffs to submit to ethyglucuronide, or "EtG" testing.  EtG is a metabolite of alcohol, and its detection can provide evidence of alcohol consumption as much as five days after consuming an alcoholic beverage.  Complaint ¶ 46.  Plaintiffs, however, allege that a variety of factors, including ordinary products such as hand sanitizer (routinely used in hospitals), and other factors such as age, sex and certain medical conditions, may contribute to positive EtG results.  Complaint ¶ 30.  In light of these factors, Plaintiffs assert that EtG test subjects may test positive without having consumed alcohol.

The licensing boards monitored Plaintiffs' alcohol consumption by contracting with third-party administrators ("TPAs"), Compass and FirstLabs, to collect urine samples for EtG analysis.

---

[1] The class of Plaintiffs includes medical doctors, pharmacists, nurses and a physical therapist.  <u>See</u> Plaintiffs' Complaint at ¶¶ 2-6.

The samples were tested by one of the two laboratory Defendants, Quest and NMS. The TPA Defendants provided the services of Medical Review Officers ("MRO") for alcohol and drug screening programs in the United States. The TPA Defendants interpreted Plaintiffs' EtG tests results and reported to the licensing boards. Complaint ¶ 24. Plaintiffs tested positive for EtG despite the fact that all Plaintiffs claim that they had not consumed alcohol.

Plaintiffs sued the laboratory Defendants that developed the test, and the TPAs that reviewed the results. Plaintiffs brought this action in December 2006, alleging a wide variety of claims. Plaintiffs subsequently withdrew all of their claims except for negligence and breach of fiduciary duty.

On December 28, 2007, this Court dismissed both causes of action for failure to state a claim. Plaintiffs appealed, and the Third Circuit determined that the initial pleadings were insufficient for a court to properly assess Plaintiffs' claims. See Garlick v. Quest Diagnostics, Inc., 2009 U.S. App. LEXIS 2562, at *7 (3d Cir. N.J. 2009). The Third Circuit remanded, and directed Plaintiffs to amend their claims. The Court observed that,

> Garlick has sued two groups of defendants and makes distinct yet inter-related negligence claims against each. And the substance of those claims may raise issues of first impression in many of the relevant state-law tort regimes. These features of the case made it especially important for Garlick to have pleaded her right to relief with precision. Yet, the language of the complaint, taken together with the arguments made to this Court (in the briefs and at oral argument), suggest that she instead took a somewhat scattershot approach.
>                                     . . .
> Garlick's claims are not clear enough for us to apply the pertinent [law], in this case various bodies of state tort law. We will exercise our discretionary authority to give Garlick the opportunity to refine [them] into clear enough terms such that the District Court may do so in the first instance.

Id. In light of this decision, Plaintiffs amended their Complaint on March 13, 2009. With the benefit

-3-

of revised pleadings, this Court will consider whether Plaintiffs have stated a claim upon which relief can be granted.

Plaintiffs assert that the EtG test, even when properly performed, has an unreasonably high likelihood of generating a false positive for alcohol consumption.[2]  In their Amended Complaint, Plaintiffs assert that Quest and NMS were negligent in "promoting, advertising, marketing, selling, reporting, interpreting and setting arbitrary cutoffs for EtG drug testing for alcohol abuse."[3]  For example, Plaintiffs allege that Quest falsely advertised that "EtG is not detectable in urine unless an alcoholic beverage has been consumed," and that NMS was negligent in claiming that "any value above 250 ng/mL indicates alcohol consumption" and that the test was "validat[ed]."  Plaintiffs allege that these statements are contrary to scientific evidence, and that the two testing labs were, therefore, responsible for setting unreliable EtG cut-off levels for the alcohol tests.

Plaintiffs also contend that TPA Defendants, Compass and FirstLab, were negligent in their "promoting, advertising, marketing, selling and contracting with professional licensing boards for EtG testing, and their designing, implementing, and managing professional drug and alcohol testing programs using the EtG test, and reporting and interpreting the EtG test at the arbitrarily set cutoffs as sole proof of professional alcohol abuse."  For example, Plaintiffs alleged that Compass erroneously asserted that EtG results of 500 ng/mL conclusively proved intentional consumption of

---

[2]  Plaintiffs do not argue that the test samples were mishandled or that the test does not accurately detect the presence of EtG.

[3] For example, Plaintiffs allege that, contrary to scientific evidence, Quest falsely advertised that "EtG is not detectable in urine unless an alcoholic beverage has been consumed," Plaintiffs assert that NMS was negligent in claiming that "any value above 250 ng/mL indicates alcohol consumption" and that the test was "validat[ed]."  Most importantly, Plaintiff allege that the two testing labs were responsible for setting unreliable EtG cut-off levels for the alcohol tests.

alcohol.   Plaintiffs argue, then, that the four Defendants were negligent in designing and implementing the test.

On April 15, 2009, Defendants moved to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim.

## II.  STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In Bell Atlantic Corp. v. Twombly the Supreme Court clarified the Rule 12(b)(6) standard.  ___ U.S. ___, 127 S.Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  Id. at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.

Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

### III. DISCUSSION

Plaintiffs assert negligence claims against all Defendants.[4]  The basic elements of a negligence claim are common to all Plaintiffs.  Plaintiffs must plead:  (1) a duty owed to Plaintiff by Defendant; (2) a breach of that duty; and (3) an injury to Plaintiff resulting from Defendant's breach.  See Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270, 280 (Pa. 2005); Siddons v. Cook, 382 N.J. Super. 1 (App. Div. 2005); Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004); Williamson v. City of Hays, 64 P.3d 364, 372 (Kan. 2003); Artiglio v. Corning Inc., 957 P.2d 313, 1318 (Cal. 1998); Krokowski v. Henderson Nat'l Corp., 917 P.2d 8, 11 (Okla. 1996); Greater Houstin Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).

Defendants first argue that Plaintiffs' negligence claims must fail because laboratories and third-party administrators do not owe a duty of care to test subjects.  Next, Defendants argue that even if Plaintiffs can make out a claim for negligence, their claims must fail because all communications from Defendants to the state medical boards are privileged, and therefore cannot be used to support Plaintiffs' cause of action.

#### A. NEGLIGENCE - DUTY OF CARE

The first question before this Court is whether laboratories and third-party administrators hired by a state medical board to conduct alcohol testing of health care professionals owe a duty of care to the individuals being tested.  As previously determined, this Court will apply the law of the

---

[4]  As a federal district court sitting in diversity, this Court applies the choice of law rules of New Jersey, the forum state.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).  As explained in this Court's choice of law analysis in Garlick v. Quest Diagnostics, Inc., 2007 U.S. Dist. LEXIS 95160, at *8-10 (D.N.J. Dec. 28, 2007), the Court will apply the state law of each Plaintiff's home state.  The parties do not dispute that the substantive law of Plaintiffs' home states should be applied.

Plaintiffs' home states:  California, Kansas, Pennsylvania, Texas, Indiana and Oklahoma.[5]   The

Court will assess the applicable law of each state in turn.

      1. CALIFORNIA

The Court finds that California would recognize a duty of care owed from Defendants to

Plaintiffs.  As a number of recent decisions have confronted the precise question before this Court,

the cases are worth discussing at length.

In Quisenberry v. Compass Vision, Inc., 618 F. Supp. 2d 1223 (S.D. Cal. 2007), the plaintiff

asserted a negligence claim against a laboratory and TPA.  Plaintiff's complaint alleged that "the EtG

program ran by Defendants for purposes of testing nurses for substance abuse sets forth an extremely

low reporting limit."  Id. At 1226.[6]  As a result of the unreliably low cut-off, "individuals who

consume ordinary products such as a mouthwash [could potentially have] fail[ed] the test."  Id.  The

Court determined that laboratories and TPAs owe a duty to the individuals whose specimens they

test at the request of others (i.e., employers).  Id. 1230-31.

Although the Court noted that courts across the country were split on the issue, it determined

that a duty existed.  See id. at 1228.  In addition to reviewing analogous case law, the Court

---

[5] Where there is no guidance in the state's tort law regime regarding whether Plaintiffs'
cause of action would be recognized under the facts of this case, the Court must make an "Erie
guess" as to whether a potential cause of action exists.  See, e.g., Highlands Ins. Co. v. Hobbs
Group, LLC, 373 F.3d 347, 351 (3d Cir. 2004) (noting that a where state's high court had not
squarely addressed whether a legal duty exists under the particular circumstances of the case,
under Erie principles [federal courts applying state law] must predict whether that court would
recognize such a duty under the circumstances presented").  In doing so, "the federal court may
consider a wide range of reliable sources, including relevant state precedents, analogous
decisions and reasoned dicta, as well as the policies and doctrinal trends informing and emerging
from those decisions."  Id. at 351 (internal citations omitted).

[6] The two defendants are also defendants in the action before this Court–Quest and
Compass, a laboratory and TPA, respectively.

-7-

conducted its own duty analysis, setting forth a number of factors to be considered in determining whether a duty exists:

> (1) the foreseeability of harm to the plaintiff; (2) the degree of certainty that the plaintiff suffered injury; (3) the closeness of the connection between the defendant's conduct and the injury; (4) the extent to which the transaction was intended to affect the plaintiff; (5) the extent of the burden to the defendant and consequences to the community of imposing a duty of care; (6) the moral blame attached to the defendant's conduct; (7) the availability, cost, and prevalence of insurance for the risk involved; and (8) the policy of preventing future harm.

Id. at 1229-30 (internal citations omitted).  The Court placed special emphasis on the first factor–the foreseeability of the harm–and explained that to determine whether a duty exists, California courts reject "overly rigid common law formulations . . . in favor of allowing compensation for foreseeable injuries caused by a defendant's want of ordinary care." Id. at 1228 (citations omitted). They observed that "[w]e cannot imagine a more foreseeable harm than the harm that may result from inaccurate laboratory testing of individuals . . . [as testing] is often a pre-requisite to being hired, promoted, or even continuously employed." Id. at 1230.

The Quisenberry Court found that the second, third, fourth and fifth factors were also satisfied.  Id.  It was undisputed that Plaintiff has suffered injury–suspension and potential loss of nursing license.  Id.  There was a clear connection between Defendants' conduct and Plaintiff's injury; in fact, Defendants fully intended that the testing would have an effect on Plaintiff and similarly situated individuals.  Id.

As to the remaining factors, the Court found "that any potential burden on Defendants is outweighed by the need to protect the public from the consequences of erroneous laboratory test results . . . [and t]o hold otherwise would mean to deprive thousands of individuals from an opportunity to challenge or receive any recourse for the repercussions they may suffer due to

-8-

negligently performed laboratory tests producing erroneous or inaccurate test results." Id. (emphasis added).

The laboratory, Quest, had a duty to reasonably administer the EtG tests, and the TPA, Compass, had a duty to exercise reasonable care in the "design, implementation, and management of drug and alcohol testing programs." Id. at 1226. Based on the duty analysis in Quisenberry, Plaintiffs, here, contend that California would recognize a negligence cause of action against Defendants.[7]

Plaintiffs also rely on Wilson v. Compass Vision, Inc., 2007 WL 4570613 (N.D. Cal. Dec. 27, 2007) (unpublished) and Cleveland v. Compass Vision, Inc., 2008 WL 576755 (N.D. Cal. Feb. 29, 2008) to assert that a duty of care exists in under the facts of this case. The Wilson Court confronted facts nearly identical to those in Quisenberry.   The plaintiff, a registered nurse, contended that she was wrongfully suspended and terminated when she tested positive for opiates after consuming poppy seeds.  She asserted that the Defendants, introduced an "unfit test onto the marketplace and breached their duty to use a reasonable degree of care to avoid erroneous test results by promoting, advertising, marketing, selling, and/or contracting with the licensing board, and/or designing, implementing, and managing the ... alcohol testing program ... and/or utilizing the EtG test to allegedly establish that the plaintiff consumed an alcoholic beverage."

The Wilson Court observed that Quisenberry addressed a question of first impression, and found its analysis to be well-reasoned.  In doing so, the Wilson Court rejected the defendants'

---

[7] Testing laboratories and TPAs may be found negligent for mishandling an individual's specimen, as failure to take reasonable care can result in erroneous results causing harm to test subjects. Id. at 1230.  By the same rationale, according to the Quisenberry Court laboratories and TPAs may also be liable for administering a test which does not accurately indicate that a test subject violated of an alcohol abstinence policy.

argument that they owed no duty to the plaintiff because they did the tests at the request of the California Board of Registered Nursing.[8]  The Wilson Court rejected "Defendants' argument that promoting and conducting a flawed test is distinguishable from cases where laboratories mishandled test specimens or the reporting of test results, thereby negating their duty to plaintiff, is unpersuasive." Id. at *1.  The Court went on to explicitly adopted the reasoning in Quisenberry, and determined that the defendants owed a duty to the plaintiff, and that she, accordingly, stated a viable claim for negligence.

Defendants, here, respond that the Quisenberry, Wilson and Cleveland Courts ignored "existing California law on this very issue," and improperly found a duty.  Specifically, Defendants point to Merritt v. Quest Diagnostics, Inc., 2003 WL 21490019 (Cal Ct. App. June 30, 2003) (unpublished).  This Court does not agree with Defendants that Merritt stands for the proposition that no duty exists to Plaintiffs in these circumstances.  The facts in Merritt are substantially different from those here.  There, an employer contracted a third party to perform drug testing. The third party subcontracted out portions of the work, namely specimen collection and testing.   Specimen collection was performed by Integratest, and diagnostic laboratory services were performed by Quest Laboratories.  The plaintiff tested positive, and asserted that the false positive was the result of collection mistakes on the part of Integratest.  The plaintiff asserted that Quest had a duty to investigate collection mistakes on the part of Integratest.  Therefore, the precise question before the Merritt Court was whether the laboratory (Quest) "negligently failed to investigate the alleged collection mistakes" made by another party (Integratest) that was retained to perform collection

---

[8] The Wilson Court noted that "Defendants' argument that promoting and conducting a flawed test is distinguishable from cases where laboratories mishandled test specimens or the reporting of test results, thereby negating their duty to plaintiff, is unpersuasive."

services.  The <u>Merritt</u> Court declined to adopt such a duty.  This result, however, does not indicate

that no duty exists in the case before this Court.  Here, there is no dispute as to whether the samples

were collected or analyzed properly.  Nor is there a question as whether a party was required to take

the additional steps of investigating errors on the part of another party involved in the testing

process.  Instead, the question here is whether promoting and performing the EtG test in its current

form is negligent.  This Court does not find that the <u>Merritt</u> case compels a result different from that

of <u>Quisenberry</u>, <u>Wilson</u> and <u>Cleveland</u> .

     This Court finds that California recognizes a duty of reasonable care owed from third-party

administrators and testing laboratories to test subjects when promulgating and administering tests

to assess compliance with alcohol policies.

       2. <span style="font-variant: small-caps">Kansas</span>

     Plaintiffs assert that their negligence claim is cognizable under Kansas law, and rely on a

state appellate court case, <u>Berry v. Nat'l Med. Servs.</u>, 41 Kan. App. 2d 612 (2009).  The Court

agrees, and finds that Kansas recognizes a duty owed from Defendant laboratories and TPAs to

Plaintiffs.

     The <u>Berry</u> Court, like the cases discussed in Section III.A.1, <u>supra</u>, involved facts nearly

identical to those here.  Plaintiff "assert[ed] that Compass and NMS were negligent in [e]stablishing

cutoffs over which test results would be reported as positive that were arbitrary and scientifically

unreliable and invalid."  <u>Berry</u>, 41 Kan. App. 2d at 615-16.  The issue before the Court, as here, was

whether laboratories and TPAs owed a duty to a plaintiff who falsely tested positive for EtG.  <u>Id.</u> at

614-16 ("Resolution of the negligence claim turns on whether the defendants owed a duty to plaintiff

under the facts alleged").  The Court observed that

[t]hree elements must be satisfied before a legal duty arises in Kansas.  First, the plaintiff must be a foreseeable plaintiff, i.e., within the range of apprehension.

Second, the probability of harm must be foreseeable.  [T]he test of negligence . . . is not whether the [defendant] should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result. . . .  An injury is foreseeable so as to give rise to a duty of care where a defendant knows or reasonably should know that an action or the failure to act will likely result in harm.

Third, there must be no public policy against imposing the claimed duty on the defendant.

Id. at 616-18  (internal citations omitted).  The Court found that the plaintiff easily satisfied the first two elements–she was a foreseeable plaintiff (as one of the test subjects), and the harm was foreseeable (a licensed professional automatically being denied the opportunity to continue in her profession).  Further, the Court determined that public policy considerations did not require that Defendants be shielded from liability.[9]  As such, the Court "conclude[d] that under Kansas law Berry has alleged the breach of a recognizable duty, and she has pled a cause of action for which relief may

---

[9] The Court explained:

[T]he defendants solicited business from the Board to test nurses whose licenses were at risk because of claims of alcohol abuse. The defendants could clearly foresee that a positive test result could result in the loss of the test subject's license. The exact harm Berry claims to have experienced here was a foreseeable consequence of negligence in the testing and reporting of the test results to the Board.

[T]here is no public policy against imposing liability. We defer to our legislature in establishing public policy and find no expression by our legislature that urinanalysis providers are exempt from liability for their negligence in providing faulty results or interpretations.

Berry, 41 Kan. App. 2d at 618.

be granted." Id. at 619.[10]

This Court agrees with the result and analysis in Berry, and determines that Kansas law recognizes a duty owed from laboratories and TPAs to test subjects.

3. PENNSYLVANIA

Plaintiffs assert that Pennsylvania recognizes a claim for negligence under the facts here, and rely, in particular, on Sharpe v. St. Luke's Hosp., 573 Pa. 90 (2003) (unpublished). The Sharpe case is not as precisely on point as the cases discussed above with respect to California and Kansas law. This Court, nonetheless, finds that the duty analysis conducted by the Supreme Court of Pennsylvania in Sharpe, indicates that Defendants owe Plaintiffs a duty of reasonable care to test subjects in promoting and applying alcohol/drug tests.

The Sharpe Court considered whether a hospital, which was contracted by a third-party employer to collect samples for drug testing, owed a duty of care to test subjects in collecting and handling urine specimens for employment-related drug testing.[11]   The Court conducted a duty analysis consisting of five factors: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed

_____

[10] Defendants do not seriously attempt to distinguish Berry from the case here.  Instead, in their Reply Brief, they assert that a petition for review has been filed, and they "anticipate" that the decision will be overturned.  This Court, however, finds the Berry Court's reasoning to be sounds, and note that the decision is in accord with the California law discussed above.

[11] Here, unlike the Quisenberry and Berry cases discussed above, the plaintiff asserted that the defendant was negligent in the handling and care of her specimen–not that the drug test itself was improper.  Nonetheless, the case is substantially analogous to the case before this Court, and was issued by the highest court in Pennsylvania.  This Court, then, heavily relies on the Sharpe Court's duty analysis in making an Erie prediction as to the recognition of Plaintiffs case under Pennsylvania law.

solution." Id. at 96.

Regarding the first factor, the Court held that the relationship between the Hospital and the plaintiff justified the imposition of a duty of reasonable care upon the Hospital "despite the absence of a contract between the two parties." Id.. Specifically, the Court noted that the third-party test administrator (i.e., the hospital) "was aware of the purpose of the urine screening" and "should have realized that any negligence with respect to the handling of the specimen could harm [the plaintiff's] employment." Id. at 1219; see also Kagan v. Harley Davidson, Inc., 2008 U.S. Dist. LEXIS 63932, at 58-60 (E.D. Pa. Aug. 19, 2008). The Court went on to explain that "although privity of contract may not have existed, the plaintiff was known to the defendant, and, when the defendant analyzed the plaintiff's specimen, it knew that negligent testing could wrongfully identify the plaintiff as a drug user." Id. (internal citation omitted).

The Court also determined that the remaining factors weighed in favor of finding a duty on the part of the TPA. As to the second and third factors, the court explained that, "while the [TPA]'s participation in the drug testing process certainly has social utility, the substantial harm deriving from inaccurate test results, which, in the context of [the plaintiff's] employment-related screening, allegedly took the form of a termination of gainful employment, would be a foreseeable consequence of a breach of the duty of reasonable care." Id. at 98. Regarding the fourth factor, the Court noted that the TPA was in the best position to ensure accurate results from the testing. Id. Finally, as to the last factor, the Court observed that "the increase in mandatory employment-related drug screening and the potential ramifications of false-positives create a substantial public interest in ensuring that the medical facilities involved in the testing exercise a reasonable degree of care to avoid erroneous test results occurring because of negligence." Id. at 99. The analysis and rationale applies equally

-14-

here.  Failure to act reasonably in developing and administering drug tests is likely to cause the same foreseeable results that the Court confronted in Sharpe.

Defendants rely on Caputo v. Compuchem Lab., 1994 U.S. Dist. LEXIS 2191 (E.D. Pa. Mar. 21, 1994) (unpublished), for the proposition that a drug testing laboratory owes no duty to an employee being tested.  This Court finds such reliance to be misplaced.  As an initial matter, the decision was issued nearly a decade prior to the Supreme Court of Pennsylvania's decision in Sharpe. In any case, the facts before this Court are distinguishable.  The plaintiff in Caputo contended that the entity conducting the drug tests had a duty to inform the employer of the various non-controlled substances that, if consumed, could lead to a false positive.  Here, in contrast, Plaintiffs claim that the threshold for a positive test result was ascertained and applied in a negligent fashion.  The Caputo decision, then, is not instructive to the case here.

Based on the duty analysis conducted in Sharpe, this Court finds that Plaintiffs have plead a cognizable claim for negligence under Pennsylvania law.

4. Texas

Plaintiffs contend that there is no binding precedent in Texas as to whether a duty exists under the facts of this case, and urges this Court to find that a duty in light of the duty analyses set forth with regard to the other jurisdictions.  See Section III.A.(1)-(3), supra.  Defendants respond that in several analogous cases, Texas courts have declined to impose a duty.  This Court agrees with Defendants.

In SmithKline Beecham Corp. v. Doe, 903 S.W.2d 347 (Tex. 1995), an employer rescinded a job offer after a pre-employment drug test by SmithKline revealed opiates in the plaintiff's urine. The plaintiff contended that the test result was caused by consumption of poppy seed muffins and not by use of any controlled substances.  Id. at 348.  The Court considered whether (1) SmithKline was

-15-

negligent in failing to warn the plaintiff or her employer of potential causes for false positive results, and (2) whether the plaintiff could sustain a negligence claim against SmithKline for allegedly overstating the accuracy of such tests to her employer.

The SmithKline Court noted that no precedent existed for imposing a duty to warn of potential non-contraband causes for positive results, as sought by Plaintiff. Id. at 353. The Court also conducted its own duty analysis, weighing factors such as risk, foreseeability, likelihood of injury and the burden imposed on the defendant. Id. The Court declined to impose a duty and focused "exclusively on the relationship between the laboratory and the person tested." Id. at 351. Plaintiff, additionally, asserted that SmithKline could be found negligent in "creat[ing] a benchmark above which a sample was labeled as 'positive' and below which a sample was labeled as 'negative' [because] SmithKline used its professional judgment in order to decide where that benchmark should be." Id. at 361 (J. Gammage, dissent). Moreover, as here, the plaintiff noted that SmithKline's "promotional literature advertised that a positive finding indicated, with virtual certainty, evidence of drug use." Id. The plaintiff argued that by making these statements the defendant negligently misrepresented the accuracy of the drug tests. Id. at 354. Although the Court did not address the question on the merits, it indicated that the plaintiff would not have been able to show that a duty existed. See id. at 361 (noting that the defendant conclusively negate[d] at least one of the essential elements [i.e., duty element] of . . . the plaintiff's cause[] of action."). In short, the SmithKline Court implied that it would not find a duty arising from the testing laboratory to drug test subjects under the circumstances of that case.

In Willis v. Roche Biomedical Laboratories, 61 F.3d 313, 316 (5th Cir. 1995), the Fifth Circuit was required to make an "Erie prediction" as to whether a laboratory owes a duty to specimen donors

to use due care in conducting drug tests under Texas law.  See generally note 5, supra.  Relying on

the SmithKline decision of the Texas Supreme Court, the Firth Circuit found that

> [a]lthough the Supreme Court of Texas emphasized in SmithKline that it was not considering whether a drug testing laboratory has a duty to use reasonable care in performing tests and reporting results, we must consider what the court did say in determining what Texas law is. Recognizing the risks inherent in making an Erie "guess", we find that under current Texas law, Roche owed Willis no duty of reasonable care in testing his urine for drugs.

Id.

More recently, in Mission Petroleum, 106 S.W.3d at 710, a plaintiff argued that the Court

should "recogniz[e] a common law duty [on the part of the employer] to use reasonable care in

collecting urine samples . . . because an employee's need for protection from a flawed drug-test result

outweighs the magnitude of the burden of guarding against this injury."  Id.  The Texas Supreme

Court found that the employer did not have a duty.  The Court relied on the factors set forth in Greater

Houston Transportation Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990), and explained that courts

consider "several interrelated factors, including the risk, foreseeability, and likelihood of injury

weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding

against the injury, and the consequences of placing the burden on the defendant."

Although the facts of Mission Petroleum are different from those here, the decision appears

to indicate that Texas law does not recognize a duty of care owed from a third party testing laboratory

to a test subject.  Id.  The Texas Supreme Court, nonetheless, observed that "Courts in other

jurisdictions are split on whether a testing laboratory owes a duty to third-party employees when

collecting or analyzing urine samples."  Id. (collecting cases).[12]  The Court noted that Texas Courts

---

[12] The facts of Mission Petroleum are substantially different from those here, and the Court's application of the Phillips risk/utility balancing test would necessarily be different under

"reject a laboratory's duty of care, emphasizing generally that drug-testing companies have a direct relationship only with the employer and not the employee." Id.; see also Frank v. Delta Airlines, Inc., 2001 U.S. Dist. LEXIS 11341, at *2-*5 (N.D. Tex. Aug. 3, 2001), rev'd on other grounds, 314 F.3d 195 (5th Cir. Tex. 2002).

In light of the existing case law in Texas, and the decision of the Texas Supreme Court in Mission Petroleum, this Court predicts that the Texas Supreme Court would decline to find a duty of care under the circumstances of this case.

5. INDIANA & OKLAHOMA

Neither party extensively discusses the law of Indiana or Oklahoma to assess whether a duty of care would exist in the particular scenario before this Court. Generally, however, the law of the two states apply similar analysis to the jurisdictions discussed above. See Lowery v. Echostar Satellite Corp., 2007 Okla. LEXIS 67, at *11-13 (noting the key considerations for courts in determining whether an individual is owed a duty of care; emphasizing the foreseeability factor); Iglehart v. Bd. of County Comm'rs, 60 P.3d 497, 502 (Okla. 2002) (same); Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991) (noting that courts consider "(1) the relationship between the parties; (2) the reasonable forseeability of harm to the person injured, and (3) public policy concerns" to determine whether a duty of care exists.); Stapinski v. Walsh Construction Co., 383 N.E.2d 473, 476 (1979), vacated on other grounds, 395 N.E.2d 1251 (1979). Accordingly, Plaintiffs urge that these Indiana and Oklahoma courts would reach a result similar to the courts in California, Kansas and Pennsylvania. See Sections III.A.(1)-(3), supra. This Court agrees, and finds the reasoning of the

---

the facts of this case. This fact notwithstanding, the Mission Petroleum Court's statement regarding the current state of Texas duty of care law, albeit in dicta, appears to indicate that the Texas Supreme Court would not recognize a duty here.

courts' in <u>Quisenberry</u>, <u>Wilson</u>, <u>Berry</u>, and <u>Sharpe</u> to be compelling.  This Court further notes these cases best reflect recent developments in the case law of courts confronted facts similar (or, indeed, completely analogous) to those here.  This Court, therefore, finds that Defendants owe a duty of care to Plaintiffs under Indiana and Oklahoma law.  <u>See</u> Sections III.A.(1)-(3), <u>supra</u>.

In conclusion, Defendants owe Plaintiffs a duty of reasonable care in promoting and administering alcohol tests under the laws of California, Kansas, Pennsylvania, Indiana and Oklahoma.  The Court must decline to find such a duty under Texas law.

### B.  QUASI-JUDICIAL PRIVILEGE

Having decided that Defendants owe Plaintiffs a duty of care under certain states' tort law regimes, this Court must address Defendants' second contention–that Plaintiffs' claims cannot be maintained as a result of quasi-judicial privilege.

Defendants argue that all communications from Defendants to the individual state medical boards are privileged, and therefore cannot be used to support Plaintiffs' claims.  The case that Defendants most heavily rely upon is <u>Brown v. Lab One, Inc.</u>, 2007 U.S. Dist. LEXIS 98354, at *3 (D. Nev. July 10, 2007), <u>aff'd</u>, 313 Fed. Appx. 952 (9th Cir. 2009).  In <u>Brown</u>, a Nevada District Court construing Texas law, considered Plaintiff's tort claims against a laboratory for allegedly reporting a false positive test result to the state medical board.  <u>Id.</u>  The Court determined that all statements made to the Texas Medical Board were privileged, as it is a quasi-judicial body.  <u>Id.</u> at *20.  Therefore, the defendant laboratory's communications to the medical board were privileged and plaintiff was unable to use the communications as a basis for any tort claim.  <u>Id.</u>  The Court ruled that "[b]ecause all of Plaintiff's claims are based on Defendants' communications to the Board or their testimony at the [in-court] criminal adjudication, the privilege bars all of Plaintiff's claims." <u>Id.</u>  This

Court finds that Brown, and the application of judicial privilege more generally, does not operate as a complete bar to Plaintiffs' claims here.

Even assuming that all of Defendants' statements to the medical review boards (or statements made in anticipation of the board proceedings) are privileged, Plaintiffs' claims could still proceed, because their claims are not based exclusively on such statements. Unlike Brown, Plaintiffs' claims here are based upon Defendants' actions and statements associated with the establishment and promotion of EtG testing that has lead to false positives. The conduct that led to the alleged harm in this case did not occur within the context of a quasi-judicial proceeding. Instead, Plaintiffs here allege that Defendants "published statements and claims promoting the absolute reliability and validity of EtG in detecting alcohol abuse, in promotional materials, on websites, in published articles and in statements by their sales personnel." Complaint ¶ 48. For example, Plaintiff alleges that Quest falsely advertised that "EtG is not detectable in urine unless an alcoholic beverage has been consumed" and Compass asserted that EtG results of 500 ng/mL conclusively proved intentional consumption of alcohol. Complaint ¶¶ 48-58. Plaintiff alleges that Defendants made these statements (and a number of similar statements) directed to the efficacy of EtG testing. Many of such statements occurred prior to the initiation of any medical board proceeding and cannot, then, be privileged.

In Brown, the Court determined that as "**all of Plaintiff's claims** [we]re based on [the TPAs' and laboratories'] **communications to the Board or their testimony at the criminal adjudication**, the privilege bars all of Plaintiff's claims, regardless of how Plaintiff has labeled the claims." 2007 U.S. Dist. LEXIS 98354, at *20 (D. Nev. July 10, 2007) (emphasis added). In contrast, here, Plaintiffs rely on communication that Defendants made outside the scope of medical board proceedings to support their negligence claim.

-20-

This Court cannot conclude that the application of quasi-judicial immunity applies to Defendants' allegedly tortious conduct in its entirely.[13]  Accordingly, Plaintiffs can state a cognizable claim of negligence against Defendants.


## IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **denied** as to the California, Kansas, Pennsylvania, Indiana and Oklahoma Plaintiffs, and Defendants' motion to dismiss is **granted** as to the Texas Plaintiffs.


/s/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.


Date:             December    14   , 2009
Original:         Clerk's Office
cc:               All Counsel of Record
                  The Honorable Mark Falk, U.S.M.J.
                  File

---

[13] Defendants' claim of privilege as to particular evidence–i.e., certain statements made to, or in anticipation of, the medical board proceedings–need not be decided here.  The Court, at this time, only observes that many of Defendants' allegedly negligent actions are not in any way related to the medical board proceedings.  Such actions cannot be construed as quasi-judicial in nature, and therefore are not privileged.

-21-